UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

CORINNE AIMERS,

        Plaintiff,

v.

        Case No.: _____

DIRECT GLOBAL FORWARDING, and
LARSON LEGACY GROUP, INC.

        Defendants.

## COMPLAINT

COMES NOW Plaintiff Corinne Aimers, by and through her undersigned counsel, and as for her causes of action against the Defendants Direct Global Forwarding, Inc. and Larson Legacy Group, Inc. states and alleges as follows:

### INTRODUCTION

1. This is an action under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and its implementing regulation, the Wisconsin Fair Employment Act ("WFEA"), Wis. Stat. § 111.321, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, on behalf of Plaintiff Corinne Aimers against defendants Direct Global Forwarding, Inc. and Larson Legacy Group, Inc.

### JURISDICTION AND VENUE

2. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a) because the state-law claim is related to the claims in this matter and are part of the same case or

controversy. The Court may grant declaratory relief and other relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of Wisconsin because Plaintiff resides in this district, Defendants reside in and employed Plaintiff in this District, and the unlawful employment practices alleged below giving rise to Plaintiff's claims occurred in this District.

## PARTIES

4. Plaintiff Corinne Aimers ("Aimers") is an adult resident of the State of Wisconsin with a residential address of 9505 S. Ryan Green Court, Franklin, WI 53132.

5. Defendant Direct Global Forwarding, Inc., ("DIRECT GLOBAL"), is a domestic close corporation with an address for its registered agent in the State of Wisconsin of 11122 W. Rogers Street, Milwaukee, WI 53227.

6. Defendant Larson Legacy Group, Inc., ("LARSON"), is a domestic close corporation with an address for its registered agent in the State of Wisconsin of 11122 W. Rogers Street, Milwaukee, WI 53227. Upon information and belief, LARSON acts or acted as a holding company for DIRECT GLOBAL and other subsidiary companies that are relevant to this action.

7. During the time periods forming the basis of this action, Plaintiff worked for DIRECT GLOBAL in the position of Vice President of Operations.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff timely filed a complaint of discrimination with the U.S. Equal Employment Opportunity Commission on May 13, 2020.

9. The EEOC issued a right to sue letter and that letter was dated August 18, 2020. However, due to COVID-19-related delays the right to sue letter was not mailed at that time. Instead, Plaintiff did not receive her right to sue letter until its posting on the EEOC complainant

portal on or about October 13, 2020. To date, Plaintiff has not received her right to sue letter by U.S. Mail. In any event, this filing is made 90 days or less since receipt of the right to sue letter.

## STATEMENT OF FACTS

10. DIRECT GLOBAL hired Aimers to the position of Vice President of Operations on or about June 24, 2019. Aimers was paid on a salary basis.

11. Upon information and belief, DIRECT GLOBAL is and was a subsidiary of LARSON, which acts as a holding company for a number of subsidiary companies all engaged in similar commerce in the area of freight and logistics including import and export. Upon information and belief, these companies are all owned by the same individuals, are all operated from the same principal office, have interconnected or related business, and are all wholly owned subsidiaries of LARSON or are directly under the control of LARSON.

12. Although commencing position of Vice President of Operations on or about June 24, 2019, Aimers was hired into the LARSON-affiliated businesses on June 27, 2018. Aimers previously held the title of Logistics Account Executive with Direct Drive Logistics, Inc. She received payroll and benefits from a different company – Direct Drive Express, Inc. Although ostensibly different companies, in effect, Aimers was working for LARSON through its subsidiaries since June 2018.

13. Aimers was hired in June 2018 through the Social Security Administration's Ticket to Work Program. Participation in the Ticket to Work Program is dependent on eligibility for Social Security Administration (SSA) disability benefits and an SSA disability determination. Aimers used the Ticket to Work Program to originally secure employment with LARSON and its affiliated entities in 2018.

14. Aimers is disabled. Due to an autoimmune condition, Aimers suffers from interstitial lung disease. The disease compromises her lungs and affects her physical health in a multitude of ways. Aimers disability qualified her for disability benefits through SSA and she obtained work through the SSA Ticket to Work Program.

15. LARSON – and by extension DIRECT GLOBAL – were aware of Aimers's disability at the time of her initial hiring in June 2018, and also her promotion to Vice President of Operations in 2019. Principal owner of LARSON and its affiliated entities, subsidiaries, and other businesses – Tami Larson – interviewed Aimers and received notice of her disability through multiple channels: employment application, correspondence with disability and the Ticket to Work Program, direct conversation with Aimers, and communication with HR, among other avenues.

16. Prior to her position with DIRECT GLOBAL, through the LARSON-affiliated business Direct Drive Logistics, Aimers did not receive any substantive negative review of her work performance.

17. Due to her excellent work history, Aimers was promoted to Vice President of Operations for DIRECT GLOBAL – a new company and operation for LARSON.

18. As Vice President of Operations, DIRECT GLOBAL never once provided any written negative review of Aimers work performance. Aimers had not indication or reason to believe her job was in jeopardy. Aside from the times during which Aimers had to take medical leave for illnesses due to her disability, Aimers performed the essential functions of her job with competency and diligence.

19. Due to Aimers's disability, she is prone to sickness and infections, particularly of the lungs, but also of other areas of the body

20. During the time period of August into September of 2019, Aimers began to feel sick and communicated her issues with Steve Tutkowski and Todd Jeske. Mr. Tutkowski and Mr. Jeske approved Aimers time off while she pursued medical testing.

21. Aimers test results showed she had developed MAI[1] – mycobacterium avium-intracellulare infection, developed due to a flare up of her interstitial lung disease. Aimers would require a drug protocol to treat the infection. Aimers also later developed diverticulitis.

22. Aimers continued to work while under her medication regiment for MAI, but, despite the medication, became sicker. Aimers would require intermittent leave at times during November and December of 2019.

23. Aimers took off from work on November 14 and 15, 2019, due to MAI-related illness.

24. Aimers was seen in the Emergency Department at Ascension Hospital Franklin on November 21, 2019, where she was excused from work until November 25, 2019.

25. Aimers visited Ascension's Internal Medicine Clinic in Hales Corners, Wisconsin, on December 5, 2019, for continued ongoing medical issues related to her disability and infection. On that visit, her doctor provided a medical opinion that she should not return to work until December 16, 2019.

26. On December 16, 2019, Aimers's doctor permitted her to return to work, but provided medical restrictions of no more than four (4) hours per day of work.

27. Based upon her doctor's recommendations, Aimers sought to return to work. On or about December 16, 2019, she requested an accommodation from DIRECT GLOBAL to work a reduced hour schedule for approximately two weeks based upon her doctor's recommendation.

---

[1] *See generally*, *Mycobacterium Avium Complex infections*, https://rarediseases.info.nih.gov/diseases/7123/mycobacterium-avium-complex-infections (last visited 11/17/20)

28. Aimers's accommodation request was never addressed.

29. GLOBAL DIRECT terminated Aimers on December 17, 2019, her first day returning to work after her medical leave of absence for medical treatment related to her disability.

**COUNT ONE**

(Violation of the Americans with Disabilities Act)

30. Aimers repeats, realleges, and incorporates by reference all allegations contained in paragraphs 1-29 above as if they were set forth at length herein.

31. The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, prohibits employers from discriminating against qualified individuals because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

32. Aimers is a qualified individual within the meaning of 42 U.S.C. § 12111(8) in that she has interstitial lung disease, DIRECT GLOBAL perceived her to have a disability, she has the requisite education and skills to perform the essential functions of the position Vice President of Operations with or without reasonable accommodation, and held the position.

33. DIRECT GLOBAL is an "employer" within the meaning of 42 U.S.C. § 12111(5) in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years. Thus, it is a covered entity within the meaning of 42 U.S.C. § 12111(5).

34. Aimers was an employee of DIRECT GLOBAL within the meaning of 42 U.S.C. § 12111(4).

35. Prior to and at the time DIRECT GLOBAL terminated Aimer's employment, Aimers was qualified for employment as Vice President of Operations.

36. DIRECT GLOBAL was aware of Aimers's disability.

37. DIRECT GLOBAL failed to accommodate Aimers's disability.

38. On December 17, 2019, due to Aimers actual or perceived disability, DIRECT GLOBAL terminated her employment. 42 U.S.C. § 12112(a).

39. DIRECT GLOBAL terminated Aimers under the guise that she was not meeting performance expectations.

40. DIRECT GLOBAL's reason for terminating Aimers's employment was a pretext. DIRECT GLOBAL terminated Aimers on the basis of her disability, and leave associated with that disability, and did not accommodate her disability.

41. Aimers has been damaged by DIRECT GLOBAL's violated of the ADA inasmuch as Aimers has suffered loss of past and future wage and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

42. Aimers is entitled to attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

43. Aimers is further entitled to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief.

## COUNT TWO
(Wisconsin Fair Employment Act ("WFEA"))

44. Aimers repeats, realleges, and incorporates by reference all allegations contained in paragraphs 1-43 above as if they were set forth at length herein.

45. Aimers is an individual who suffers from a disability under the WFEA.

46. DIRECT GLOBAL took adverse employment actions against Aimers while knowing or having reason to know that Aimers suffered from those disabilities.

47. DIRECT GLOBAL's reasoning for termination of performance issues was a pretext to its discriminatory act.

48. DIRECT GLOBAL's termination of Aimers was a discriminatory act.

49. DIRECT GLOBAL's conduct was unlawful and caused harm to Aimers in an amount to be determined at trial.

## COUNT THREE

(Retaliation under the Family Medical Leave Act ("FMLA"))

50. Aimers repeats, realleges, and incorporates by reference all allegations contained in paragraphs 1-49 above as if they were set forth at length herein.

51. The Family Medical Leave Act, 29 U.S.C. 2601, *et seq.*, prohibits employers from "interfere[ing] with, restrain[ing], or deny[ing], the exercise or attempt to exercise" an employee's right to take leave. § 2615(a)(1).

52. Aimers was eligible for FMLA protection.

53. DIRECT GLOBAL is covered by FMLA.

54. Aimers was entitled to take FMLA leave due to a serious health condition that required ongoing treatment by a healthcare provider.

55. Aimers provided sufficient notice to DIRECT GLOBAL of her serious health condition and intent to take medical leave.

56. Aimers engaged in statutory-protected activity when she took FMLA leave.

57. DIRECT GLOBAL took adverse employment actions against Aimers when Aimers returned from FMLA leave by immediately terminating her employment.

58. But for Aimers notice of disability and taking of FMLA leave, DIRECT GLOBAL would not have taken adverse action against Aimers.

59. DIRECT GLOBAL's conduct was willful because it knew and showed reckless disregard for Aimers's right to take FMLA leave and her associated disability.

8

60. DIRECT GLOBAL's conduct was unlawful and caused harm to Aimers in amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for damages in amount to be determined at trial, together with interest, costs of suit, attorneys' fees, and all other relief as the Court deems just and proper. Furthermore, Plaintiff specifically prays that the Defendants be enjoined from failing or refusing to provide sufficient remedial relief to make whole Plaintiff for the losses she has suffered as a result of the discrimination against her as alleged in the Complaint, and take other appropriate nondiscriminatory measure to overcome the effects of the discrimination.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated in Kenosha, Wisconsin, this */d/* 17th day of November, 2020.

        Respectfully submitted,

        **RIZZO & DIERSEN, S.C.**
        *Attorneys for Plaintiff Corinne Aimers*

By:   /s/ James M. Payne
      James M. Payne, Esq.  SBN: 1105889
      3505 30th Avenue
      Kenosha, WI 53144
      (262) 652-5050
      (262) 652-5053 (facsimile)
      jmp@rizzolaw.com