# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CORINNE AIMERS,

          Plaintiff,

v.                                             Case No. 20-CV-1725

DIRECT GLOBAL FORWARDING, INC., et al.,

          Defendants.

# DECISION AND ORDER

Plaintiff Corinne Aimers worked as vice president of operations for defendant Direct Global Forwarding, Inc. (ECF No. 1, ¶ 10.) She alleges that she was terminated in violation of the Americans with Disabilities Act (ADA) (ECF No. 1, ¶¶ 30-43), the Wisconsin Fair Employment Act (ECF No. 1, ¶¶ 44-49), and the Family and Medical Leave Act (FMLA) (ECF No. 1, ¶¶ 50-60).

The defendants, Direct Global and an affiliated corporation, Larson Legacy Group, Inc., have moved to dismiss Aimers's claim under the Wisconsin Fair Employment Act. (ECF No. 12.) Aimers does not object to the dismissal of her Wisconsin Fair Employment Act claim. (ECF No. 18.) Therefore, that aspect of the

defendants' motion will be granted and count two of Aimers's complaint dismissed without prejudice.

Larson separately moves to dismiss all claims against it (ECF No. 12) because it neither employed Aimers (ECF No. 13 at 3-6) nor allegedly engaged in any discriminatory conduct toward her (ECF No. 13 at 6).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiffs." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

It is unclear from the face of the complaint why Aimers included Larson as a defendant. Regarding Larson the complaint alleges:

- "LARSON acts or acted as a holding company for DIRECT GLOBAL and other subsidiary companies that are relevant to this action." (ECF No. 1, ¶ 6.)

- "Upon information and belief, DIRECT GLOBAL is and was a subsidiary of LARSON, which acts as a holding company for a

2

- number of subsidiary companies all engaged in similar commerce in the area of freight and logistics including import and export. Upon information and belief, these companies are all owned by the same individuals, are all operated from the same principal office, have interconnected or related business, and are all wholly owned subsidiaries of LARSON or are directly under the control of LARSON." (ECF No. 1, ¶ 11.)

- "Although commencing position of Vice President of Operations on or about June 24, 2019, Aimers was hired into the LARSON-affiliated businesses on June 27, 2018. Aimers previously held the title of Logistics Account Executive with Direct Drive Logistics, Inc. She received payroll and benefits from a different company – Direct Drive Express, Inc. Although ostensibly different companies, in effect, Aimers was working for LARSON through its subsidiaries since June 2018." (ECF No. 1, ¶ 12.)

Having said that, Aimers alleges that she worked for Direct Global (ECF No. 1, ¶ 10) and that it was Direct Global who fired her (ECF No. 1, ¶ 29). None of the substantive allegations in the complaint refer to Larson. (ECF No. 1, ¶¶ 30-60.) For example, with respect to the ADA claim, Aimers alleges that "…DIRECT GLOBAL perceived her to have a disability…" (ECF No. 1, ¶ 32); "DIRECT GLOBAL is an "employer" within the meaning of 42 U.S.C. § 12111(5) …" (ECF No. 1, ¶ 33); "Aimers was an employee of DIRECT GLOBAL …" (ECF No. 1, ¶ 34); "DIRECT GLOBAL was aware of Aimers's disability…" (ECF No. 1, ¶ 36); "DIRECT GLOBAL failed to accommodate Aimers's disability…" (ECF No. 1, ¶ 37); and "DIRECT GLOBAL terminated [Aimers's] employment…" (ECF No. 1, ¶ 38). The entire complaint similarly speaks only in terms of actions by Direct Global.

In its motion to dismiss Larson speculates that Aimers named it as a defendant because Direct Global by itself does not employ enough people to be subject to the federal laws upon which Aimers's claims rely. (ECF No. 13 at 3); *see also* 29 U.S.C. § 2611(4) (defining employer under the FMLA, in part, as one that employs at least 50 people); 42 U.S.C. § 12111(5) (defining employer under the ADA, in part, as one that employs at least 15 people). In her response, Aimers does not explicitly acknowledge that this was her reason for including Larson as a defendant. But given the authority she discusses, she implicitly acknowledges as much.

Aimers asserts that "Larson is *de facto* the same company as Direct Global Forwarding because Larson directs, supervises, and controls Direct Global Forwarding's business." (ECF No. 18 at 2.) She points to *Papa v. Katy Indus.*, 166 F.3d 937, 940 (7th Cir. 1999), where the court described "three situations in which the policy behind the exemption of the tiny employer is vitiated by the presence of an affiliated corporation." *Id*. First, traditional principles of corporate veil piercing may apply. *Id*. Second, the corporation might have fragmented itself "for the express purpose of avoiding liability under the discrimination laws." *Id* at 941. Or "[t]hird, the parent corporation might have directed the discriminatory act, practice, or policy of which the employee of its subsidiary was complaining." *Id*. Aimers argues that the first and third situations exist here.

The fact that it is unclear from the face of the complaint why Larson was named as a defendant strongly suggests that Aimers has failed to adequately plead the presence of any of the *Papa* situations. For example, with respect to her ADA claim, Aimers explicitly alleges that Direct Global (not Direct Global when combined with Larson) has the requisite number of employees. (ECF No. 1, ¶ 33). Her FMLA claim does not similarly allege that Direct Global has the requisite number of employees, but it does allege that Direct Global is covered by the FMLA. (ECF No. 1, ¶ 53.) She never alleges that Direct Global is subject to either the ADA or the FMLA only when considered as a part of Larson.

As to the third *Papa* situation, Aimers has failed to plausibly allege that Larson directed the relevant discriminatory act, practice, or policy that led to her termination. The complaint is devoid of allegations regarding any allegedly discriminatory practice or policy, much less that it was directed by Larson. The alleged discriminatory act was the termination of Aimers's employment, and she is explicit and consistent in her complaint that it was Global Direct that terminated her. (ECF No. 1, ¶¶ 29, 35, 38, 39, 40, 57.) Never does she allege that Larson directed Global Direct to terminate her.

Thus, the court turns to whether Aimers has plausibly alleged that Larson should be considered her employer along with Direct Global under traditional veil piercing principles. "A court should look to the state of incorporation of the veiled entity to determine when and whether the corporate form should be disregarded." *Taurus IP*,

*LLC v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 919 (W.D. Wis. 2007). Aimers alleges that Direct Global is a Wisconsin corporation. (ECF No. 1, ¶ 5.)

Under Wisconsin law, "the corporation is a separate entity and is treated as such under all ordinary circumstances." *Prince v. Appleton Auto, LLC*, 978 F.3d 530, 536 (7th Cir. 2020) (quoting *Fontana Builders, Inc. v. Assurance Co. of Am.*, 2016 WI 52, ¶62, 369 Wis. 2d 495, 529, 882 N.W.2d 398, 414). "Piercing the corporate veil is appropriate only when applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim." *Id.* (quoting *Fontana Builders*, 2016 WI 52, ¶62). "[T]he fiction of corporate entity is not to be lightly regarded." *Consumer's Co-op v. Olsen*, 142 Wis. 2d 465, 475, 419 N.W.2d 211, 214 (1988) (quoting *Milwaukee Toy Co. v. Indus. Com. of Wis.*, 203 Wis. 493, 496, 234 N.W. 748, 749 (1931)).

To pierce Direct Global's corporate veil to get at Larson Aimers must show:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and (2) [s]uch control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory duty or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and (3) [t]he aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Orlando Residence, Ltd. v. Alpert*, No. 19-CV-1872-JPS, 2021 U.S. Dist. LEXIS 50713, at *11-12 (E.D. Wis. Mar. 18, 2021) (quoting *Olsen*, 142 Wis. 2d at 484, 419 N.W.2d at 217-18).

6

Evidence that may be relevant in assessing these factors include whether Direct Global followed corporate formalities and whether it was adequately capitalized for its purpose. *Olsen*, 142 Wis. 2d at 485, 419 N.W.2d at 218.

With regard to the sufficiency of the complaint the court must be mindful that, at the motion to dismiss stage, where the plaintiff has not yet had the benefit of discovery, a plaintiff is likely to be at a distinct disadvantage in alleging facts relevant to whether an entity's corporate veil should be pierced. *Cf. Parker v. Scheck Mech. Corp.*, 772 F.3d 502, 507 (7th Cir. 2014); *Teamsters Local Union No. 727 Pension Fund v. Capital Parking, LLC*, No. 19 C 837, 2019 U.S. Dist. LEXIS 202669, at *10 (N.D. Ill. Nov. 21, 2019). Without the aid of discovery, a plaintiff is unlikely to know many of the relevant details as to the relationship between a parent corporation and a subsidiary.

This is not to say that it is never appropriate to grant a motion to dismiss under the circumstances presented here. *See, e.g.*, *Sanders v. Symphony Countryside LLC*, No. 19-cv-2308, 2021 U.S. Dist. LEXIS 53814, at *10 (N.D. Ill. Mar. 23, 2021) (citing cases). In certain instances, a plaintiff may affirmatively plead herself out of court. Or her allegations might be so lacking as to suggest no plausible basis for piercing the corporate veil.

As recounted above, Aimers's allegations with respect to Larson are sparse and conclusory. She alleges that Direct Global is a subsidiary of Larson. (ECF No. 1, ¶¶ 6, 11.) But, without more, that is an insufficient basis for disregarding Direct Global's

independent corporate form. *See Taizhou Yuanda Inv. Grp. Co. v. Z Outdoor Living, LLC*, No. 19-cv-875-jdp, 2020 U.S. Dist. LEXIS 96380, at *7 (W.D. Wis. June 2, 2020) (noting "the general rule that parent companies may not be held liable for the acts of their subsidiaries") (citing *Motorola Mobility LLC v. AU Optronics Corp.*, 775 F.3d 816, 820 (7th Cir. 2015)). Although Aimers also alleges that Larson exerted control over Direct Global (ECF No. 1, ¶ 11), she offers little to develop this conclusory assertion. At best, her allegations suggest the sort of control that a parent company will commonly exercise over a subsidiary. More is required to suggest that it is plausible that, with discovery, she will be able to pierce Direct Global's corporate veil.

Moreover, Aimers seems to contradict her allegation that Direct Global and Larson's other associated companies are subsidiaries of Larson. She alleges that, "Upon information and belief, these companies are all owned by the same individuals, are all operated from the same principal office, have interconnected or related business, and are all wholly owned subsidiaries of LARSON or are directly under the control of LARSON." (ECF No. 1, ¶ 11.) When she says, "these companies," it is unclear if she is referring to only the alleged subsidiaries or if she is referring to both the alleged subsidiaries and Larson. In any event, she alleges "these companies" "are all owned by the same individuals." If Direct Global is owned by "individuals," *i.e.*, natural persons, then it is not owned by Larson. Thus, piercing its corporate veil would not get to Larson. But Aimers then contradicts this allegation later in the same sentence when she

inconsistently alleges that at least some of "these companies" are "wholly owned subsidiaries of LARSON." (ECF No. 1, ¶ 11.)

Given the general paucity of Aimers's allegations with respect to Larson, the court must grant Direct Global's motion to dismiss. Accepting as true the allegations in the complaint, they do not add up to a plausible claim for relief against Larson. Rather, they do no more than allege that Larson and Direct Global had the sort of interactions and relationships that are common between a parent entity and its subsidiary. Aimers is explicit that it was Direct Global who allegedly violated the ADA and FLMA by terminating her employment. Even if Aimers proved all that she alleges in her complaint, those facts would not support piercing Direct Global's corporate veil and holding Larson liable for its subsidiary's actions.

In the event the motion to dismiss is granted, Aimers requests leave to amend. (ECF No. 18 at 6-7.) "Generally, 'a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.'" *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 346-47 (7th Cir. 2018) (quoting *Runnion v. Girl Scouts of Greater Chicago*, 786 F.3d 510 at 519 (7th Cir. 2015)). Leave to amend should be "denied after a motion to dismiss [only] where 'it appears to a certainty that the plaintiff cannot state a claim upon which relief can be granted ….'" *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport*

9

*Comm'n*, 377 F.3d 682, 690 (7th Cir. 2004) (quoting *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1266 (7th Cir. 1978)).

Because the defects in Aimers's claim against Larson may be remediable through amendment, the court will grant Aimers the opportunity to submit an amended complaint.

**IT IS THEREFORE ORDERED** that Direct Global Forwarding, Inc. and Larson Legacy Group, Inc.'s motion to dismiss (ECF No. 12) is **granted**. Corinne Aimers's Wisconsin Fair Employment Act claim against Direct Global Forwarding, Inc. and Larson Legacy Group, Inc. is dismissed without prejudice. All remaining claims are dismissed without prejudice as to Larson Legacy Group, Inc.

At the pretrial conference under Fed. R. Civ. P. 16, the court will discuss a deadline by which Aimers will need to file any amended complaint naming Larson as a defendant.

Dated at Milwaukee, Wisconsin this 28th day of May, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge